THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:08-CV-18-FL

| | |
|---|---|
| RICKY COOPER, SR., ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Ricky Cooper, Sr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for DIB and SSI payments on 5 March 2004, alleging disability beginning 18 February 2004 due to spinal fractures, herniated disc in back, peripheral neuropathy and spine damage. (R. 50-52, 54-56, 71, 79, 401). Both claims were denied initially and upon reconsideration. (R. 36-48, 404-410). A hearing before the

Administrative Law Judge ("ALJ") was held on 15 February 2007, at which Claimant was represented by a non-attorney, and a witness and a vocational expert ("VE") appeared and testified. (R. 414-446). On 30 March 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-27). On 10 March 2008, the Appeals Council denied Claimant's request for review. (R. 5-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

2

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's and the witness' credibility; (2) improper assessment of Claimant's residual functional capacity ("RFC"); and (3) improper reliance on VE testimony. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 13-15, 18, 20. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: (1) cervical and lumbar degenerative disc disease; (2) peripheral neuropathy; and (3) borderline intellectual functioning. *Id.* The ALJ also found Claimant had a nonsevere impairment of alcohol abuse. (R. 18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found that Claimant "has no more than mild limitations on his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. The evidence further supports no episodes of decompensation of extended duration. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] to stoop, kneel, crouch, balance, climb and crawl on occasion,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

4

to understand and carry out simple instructions and to perform simple tasks with few or infrequent changes although decision making should not be a required job task. (R. 19). The ALJ noted however that Claimant can never work at heights or around dangerous machinery and should have no public interaction. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an auto body repairman. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as dining room attendant, price marker and addressing clerk. (R. 27).

## II.  Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 417). Claimant attained a ninth grade education and had worked primarily as an auto body repairman. (R. 417-19).

As a result of automobile accidents in February 2004 and May 2005, Claimant underwent a cervical fusion in July 2005. (R. 420-21). Claimant testified that he is unable to work due to pain associated with his neck, low back and legs. (R. 422, 426). Claimant's pain level varies with more bad days than good days. (R. 431).

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

Claimant experiences constant back pain which is accompanied by a periodic sharp aching pain down the right leg. (R. 422-23). Claimant's back pain is exacerbated by bending and Claimant is unable to lift and carry objects. (R. 423-24). Claimant spends half of each day in a recliner with numerous pillows for hip and back support and two to three hours in bed. (R. 423-24). Standing for a lengthy period exacerbates his back pain and sitting upright is difficult on some days. (R. 423-24). Claimant's neck pain affects his ability to turn his head left and right. (R. 426). Claimant explained the neck pain travels to his left arm and into his elbow (R. 425). He reported that using his left arm to lift or carry will bother him for a few minutes. (R. 426). Claimant stated further that he experiences pain in the back of both legs, numbness and tingling in his feet and that his feet are frequently cold. (R. 426-27). Claimant is often awakened at night due to pain and as a result, sleeps 1 to 2 hours during the day. (R. 429).

Claimant has difficulty with his balance and experiences numbness in his hands. (R. 427). Claimant stated further that as a result of the numbness, he cannot draw for more than 15 or 20 minutes at a time and he must use both hands when holding objects. (R. 427-28). Claimant reported that his memory is short and he has poor concentration. (R. 432). Claimant described himself as moody and irritable and rarely socializes with anyone other than Ms. Ridley and their daughter. (R. 432-33).

Claimant testified that he has not used cocaine or marijuana since his accident; however, he continues to drink beer on a weekly basis. (R. 433). Claimant stated he could sit straight up for thirty minutes; however, it is painful to do so. (R. 434). Claimant can stand in one spot for twenty minutes and can walk a quarter of mile without resting. *Id.* Claimant testified that he could carry up to one gallon of water and probably two gallons when using both hands. (R.

6

435). Claimant relies on the assistance of Ms. Ridley when putting on his socks and shoes. (R. 436).

As for daily activities, Claimant spends his days watching television, reading newspapers and sketching and drafting. (R. 420). He performs no household chores but goes shopping with Ms. Ridley. (R. 430). Claimant testified to mowing the lawn four or five times in the last three years. (R. 430). Claimants attends church twice a month and attends his daughter's school events. (R. 431).

### III.    Janet Ridley's Testimony at the Administrative Hearing

Janet Ridley, the mother of Claimant's child, also testified at the administrative hearing. (R. 437). Ms. Ridley has resided with Claimant for approximately eight years and explained that prior to Claimant's February 2004 motor vehicle accident, Claimant was a happy and outgoing person who provided for his family and had many friends. (R. 437-38). She explained however that subsequent to the accident, Claimant spends the majority of his time at home alone with infrequent communication with his friends. (R. 438-39). She testified further that Claimant's mental acuity and sharpness have changed for the worse and that he experiences mood swings. (R. 439). Ms. Ridley explained that some medications make Claimant excessively sleepy. (R. 440). She reported observing expressions of pain on Claimant's face when he attempts to get up or sit down. *Id.* She reported further noticing Claimant's inability to hold items in his hands at times and Claimant's need to flex his fingers. (R. 441).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Linda Augins, Certified Rehabilitation Counselor, testified as a VE at the administrative hearing. (R. 156-58, 441-45). After the VE's testimony regarding Claimant's past work experience (R. 442), the ALJ posed the following hypothetical:

> [A]ssume a younger individual with a limited education...[who] could perform a range of light an/or sedentary work that would involve only occasional stooping, kneeling, crouching, balancing, climbing or crawling. It would not have the individual in situations where [he] could be a hazard to [himself] or others, such as unprotected heights or dangerous moving machinery. Assume the individual could understand, remember and carry out simple instructions, and perform simple tasks. [T]here would be few or infrequent changes in the work. No public interaction as part of the job. I'm saying interaction, not just incidental contact. An no decision-making as part of the job...Would there be light and/or sedentary jobs?

(R. 442-43). The VE responded the individual could perform the following light unskilled positions and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) dining room attendant - DOT 311.677-010, 2,500 locally, 430,000 nationally; and (2) price marker - 209.587-034, 150 locally, 1.5 million nationally. (R. 443). As for unskilled sedentary positions, the VE explained the only position accommodating the above hypothetical was that of an addressing clerk (DOT 209.587.010, 240,000 jobs nationally).[2] *Id.* The VE stated her testimony was consistent with the Dictionary of Occupational Titles. *Id.*

Claimant's representative then asked whether the above jobs would accommodate the following additional limitations: (1) the individual's need to rest his hands for ten minutes following fifteen minutes of use; (2) a sit and stand option wherein the individual's need to

---

[2] The VE explained that no statistical information existed as to the number of addressing clerk positions locally. (R. 443).

8

exercise said option occurs as frequently as every five minutes; and (3) an inability to work in a production environment or at a production pace; and (4) the need to lie down for more than half the day. (R. 444-45). The VE responded that each of these limitations would eliminate the above positions. *Id.* Claimant's representative asked the VE to assume "that secondary to medication and pain-related sleep deprivation that the claimant would...have periods where he would nod off to sleep for a couple of minutes, up to three or four times in an hour." (R. 445). The VE responded that this frequent reaction would eliminate the above jobs. (R. 445).

## DISCUSSION

### I. The ALJ's credibility determination is incomplete.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony and to assess the credibility of Ms. Ridley's testimony. *See* Pl.'s Mem. at 4-7. Because the Court concludes that the ALJ failed to make proper findings as to the credibility of Ms. Ridley, a threshold determination affecting the remaining issues raised by Claimant, the Court does not reach Claimant's other arguments.

Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence. *See Laws*, 368 F.2d at 644. If the ALJ decides to reject lay testimony concerning a Claimant's pain or other symptoms, the ALJ must do so explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's determination is supported by substantial evidence. *See Hatcher v. Sec'y, Dep't of HHS*, 898 F.2d 21, 23-25 (4th Cir. 1989). The ALJ provided reasons for finding Claimant's testimony to be not credible. (R. 25). While summarizing Ms. Ridley's testimony, however, the ALJ did not

9

evaluate her testimony or make an explicit credibility determination. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2004) (explaining "it is for the ALJ, as a fact finder, to pass upon the credibility of the witnesses and weigh and evaluate their testimony") (citation and quotation marks omitted); *accord Ivey v. Barnhart*, 393 F. Supp. 2d 387, 389-390 (E.D.N.C. 2005) (remanding because the ALJ only gave a recitation of the lay witness testimony without making a credibility determination of said testimony).

"Without an analysis of all evidence and a sufficient explanation of the weight given to obviously probative exhibits[,] it is not possible to determine if the ALJ's decision is supported by substantial evidence." *Ivey*, 393 F. Supp. 2d at 389-390 (citation and quotation marks omitted). Accordingly, the ALJ "should and must consider lay corroboration, if any, of the claimant's subjective complaints." *Baldwin*, 444 F. Supp. 2d at 465 (quoting *Duncan v. Harris*, 518 F. Supp. 751, 758 (E.D. Ark. 1980)); *accord Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (on remand, the ALJ was instructed to address the testimony of claimant's husband and neighbor, even if their testimony added nothing more than stating that claimant's testimony was truthful); *but see Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (arguable deficiency of failing to specifically discredit witness has no bearing on outcome when the witness's testimony is discredited by the same evidence that proves claimant's claims not credible).

Because this Court finds that remand on the issue of credibility will affect the remaining issues raised by Claimant, it does not address these arguments.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 6th day of March, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge